UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


Christy D. O'Neal, et al.,                           Case No. 3:19-cv-280

        Plaintiff

    v.                                               MEMORANDUM OPINION
                                                                  AND ORDER

Denn-Ohio, LLC,

        Defendant.


        **I.    INTRODUCTION AND BACKGROUND**

    Named Plaintiffs Christie D. O'Neal and Dusty M. Shepard brought this action on behalf of themselves and those similarly situated who are or were servers at any of the Denny's franchise locations owned by the Defendants. Named Plaintiffs claim their former employers, Defendant Denn-Ohio, LLC, violated several state and federal statutes and regulations governing employee pay. (Doc. No. 1). Plaintiffs sought leave to amend their complaint to add four additional defendants: PTS Hospitality, LLC; JMAD Hospitality, LLC; Thomas F. Pilbeam; and Jack Thompson. (Doc. No. 21).[1] Defendant Denn-Ohio filed a motion in opposition. (Doc. No. 25).

    Plaintiffs moved for conditional certification of a collective action and for equitable tolling of the statute of limitations for individuals to opt-in to the collective action. (Doc. No. 22). Defendant Denn-Ohio filed a motion to dismiss counts one and two of Plaintiffs' complaint (Doc.

---

[1] I refer to these four, along with Denn-Ohio, LLC, collectively as "Defendants."

No. 7). Denn-Ohio also challenged the Court's personal jurisdiction over any claims against it by employees who work at Denny's restaurants outside the state of Ohio. (Doc. No. 29).

Plaintiff O'Neal worked as a server at a Denny's restaurant in Toledo, Ohio, from 2013 to 2017. (Doc. No. 22-1 at 9). Plaintiff Shepard worked as a server at a Denny's restaurant in Berkshire, Ohio, from 2016 to 2018. (*Id.*). Plaintiffs allege Defendants operate these, and other Denny's franchise locations, as a "single enterprise" because Defendants perform related activities through unified operation and common control for a common business purpose: the operation of a chain of Denny's restaurants. (*Id.* at 13).

## II. DISCUSSION

### A. Plaintiffs' Motion for Leave to Amend the Complaint

At the April 24, 2019 case management conference, I set May 24, 2019, as the deadline for amending the pleadings and adding parties without leave of court. On August 21, 2019, Plaintiffs filed a motion for leave to file a second amended complaint under Rule 15(a) to add two individual defendants and two corporate defendants. Because Plaintiffs seek to amend their complaint after the deadline established by the scheduling order, they must first show good cause. *See* Fed. R. Civ. P. 16(b)(4).

#### 1. Rule 16 Analysis

"In order to demonstrate good cause, the plaintiff must show that the original deadline could not reasonably have been met despite due diligence and that the opposing party will not suffer prejudice by virtue of the amendment." *Ross v. Am. Red Cross*, 567 F. App'x. 296, 306 (6th Cir. 2014) (citing *Leary v. Daeschner*, 349 F.3d 888, 906 (6th Cir. 2003)).

Plaintiffs claim they acted with due diligence by seeking leave to amend their complaint as soon as they became aware of the factual basis for their claims against the four additional defendants. Until they received the defendant's management handbook on July 29, 2019, Plaintiffs

2

were not aware the two individual defendants they seek to add, Thomas F. Pilbeam and Jack Thompson, were the owners of Denn-Ohio, LLC. (Doc. No. 21 at 2). Nor were they aware of the two corporate entities they seek to add or the fact that those entities may be involved in operating the restaurants at issue. *Id.* Once Plaintiffs became aware of these individuals and corporate entities, the Plaintiffs promptly took steps to amend their complaint. *See Callaway v. Denone, LLC*, No. 18-cv-01981, 2019 WL 1090346, at *4 (N.D. Ohio Mar. 8 2019) (granting leave to amend to add additional defendant where plaintiff was not aware of basis for claims against defendant until receipt of employee handbook).

Denn-Ohio argues that Plaintiffs should have been aware of the factual basis for their claims because Denn-Ohio's corporate filings are available to the public. (Doc. No. 25 at 3). Denn-Ohio cites *Commerce Benefits Group, Inc.* for the proposition that leave to amend should be denied when the plaintiff "knew or should have known" of the facts underlying the amendment. (*Id.* at 2) (citing *Commerce Benefits Grp, Inc. v. McKesson Corp.*, No. 1:107-cv-2036, 2008 WL 239550 (N.D. Ohio Jan. 28, 2008)). While constructive knowledge may have played a role in *Commerce Benefits Group, Inc.*, it was not dispositive. Instead, the court's decision emphasized the plaintiff's failure to explain why it did not bring the claim earlier, as well as the significant prejudice defendants would suffer if the amendment was allowed. *Commerce Benefits Grp, Inc.*, 2008 WL 239550, at *3.

Here, the Plaintiffs have provided an explanation for their failure to bring the claim earlier. *See Century Indem. Co. v. Begley Co.*, 323 F.R.D. 237, 241 (E.D. Ky. 2018) (finding good cause even though proposed amendments do not stem from new information). Plaintiffs requested discovery on Denn-Ohio's corporate structure and ownership on March 15, 2019. (Doc. No. 27-1). The due diligence requirement does not impose on a plaintiff the burden to exhaust all avenues to discover information that may serve as the basis of a claim. Instead, Plaintiffs were entitled to presume they would discover this kind of information the way many litigants routinely do, through discovery.

3

The potential prejudice to the nonmoving party also plays a role in determining good cause. *Leary*, 349 F.3d at 909. I find the Defendants will not suffer significant unfair prejudice. This is not a case where the Defendants will be confronted with a new substantive claim for which they must prepare a defense. Instead, Plaintiffs are merely bringing the same claims they have already brought against Denn-Ohio. The two individual defendants, as Denn-Ohio's owners, presumably have first-hand knowledge of many of the facts at issue. The two corporate defendants, according to Plaintiffs' allegations, work as part of a single enterprise with Denn-Ohio and these individual defendants. If this is true, they too likely already have knowledge of or access to the information they would need to defend against these claims. Further, unlike the situation in *Leary*, where the litigation had been going on for years and the court had already ruled on a motion for summary judgment as well as a motion to dismiss the plaintiffs' first amended complaint, the present case is still in the relatively early stages of the litigation.[2]

   **2. Rule 15 Analysis**

Because Plaintiffs have shown good cause under Rule 16(b)(4), I now consider whether leave to amend should be permitted under Rule 15. Pursuant to Rule 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Rule 15 sets forth a liberal policy of permitting amendments. *Springs v. U.S. Dept. of Treasury*, 567 F. App'x. 438, 443 (6th Cir. 2014). But a motion for leave to amend may be denied when: it is the product of undue delay, bad faith, or dilatory motive; there would be unfair prejudice to the opposing party; or amendment of the complaint would be futile. *Id.*

---

[2] Because Denn-Ohio has not responded to Plaintiffs' interrogatories or to Plaintiffs' attempt to schedule a deposition of Denn-Ohio's corporate representatives, it appears the parties are still engaged in discovery.

4

I addressed many of the Rule 15(a)(2) factors in the context of analyzing Rule 16(b)(4)'s good cause requirement under Rule 16(b)(4). There is no evidence of undue delay, bad faith, or dilatory motive attributable to the plaintiffs. I have already found granting leave to amend will not result in significant prejudice. Denn-Ohio's final argument is that amendment would be futile.

Denn-Ohio first asserts Plaintiffs failed to adequately plead that individuals Thomas and Pilbeam are "employers" under the FLSA. (Doc. No. 25 at 3-4). Relying on *Twombly* and *Iqbal*, Denn-Ohio argues Plaintiffs have failed to show "that Pilbeam or Thompson actually engage in the tasks they are asserting." (Doc. No. 25 at 4). Denn-Ohio contends that Plaintiffs must plead with particularity and identify exactly how Thomas and Pilbeam are "employers" under the FLSA. Denn-Ohio misconstrues both the facts and law here. *Twombly* and *Iqbal* require plausibility, not particularity. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Further, although threadbare recitals of the elements are not enough, Plaintiffs have done more here. Specifically, Plaintiffs allege each of the parties they seek to add "supervised and controlled work schedules or the conditions of employment, determined the rate and method of payment, and maintained employment records . . ." (Doc. No. 21-1 at 11-13).

Denn-Ohio's second argument fares no better. This time, they claim Plaintiffs have failed to show how PTS or JMAD are related to the allegations in their complaint. Again, this is not so. In addition to alleging that each of the corporate entities took the actions mentioned above, Plaintiffs allege that all four new defendants acted with Denn-Ohio as a "single enterprise" in the operation of a chain of Denny's restaurants. (Doc. No. 21-1 at 11-13).

I grant the Plaintiffs' motion for leave to file a second amended complaint.

**B. Denn-Ohio's Motion to Dismiss Counts One and Two**

I turn to Denn-Ohio's motion to dismiss counts one and two of Plaintiffs' complaint.[3]

In ruling on a motion to dismiss under Rule 12(b)(6), "[c]ourts must construe the complaint in the light most favorable to [the] plaintiff." *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010) (citation omitted). To survive a motion to dismiss under Rule 12(b)(6), "even though a complaint need not contain 'detailed' factual allegations, its 'factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true.'" *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555 (2007)).

Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice. *Twombly*, 550 U.S. at 555 (stating that the complaint must contain something more than "a formulaic recitation of the elements of a cause of action"). A complaint must state sufficient facts which, when accepted as true, state a claim "that is plausible on its face." *Iqbal*, 556 U.S. at 678 (2009) (explaining that the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully" and requires the complaint to allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct).

The Fair Labor Standards Act requires employers to pay covered employees a minimum wage of at least $7.25 an hour. 29 U.S.C. § 206(a)(1)(C). But there is an exception for a "tipped employee," which is "any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." 29 U.S.C. § 203(t). Under this exception, the employee still receives the minimum wage provided by § 206(a)(1), but the employer is permitted to pay the

---

[3] Although Plaintiffs' Second Amended Complaint is now the operative complaint, the amended complaint asserts the same claims that Denn-Ohio challenges.

6

employee as little as $2.13 provided that the employee's tips bring their hourly rate up to at least $7.25. 29 U.S.C. § 203(m).

Denn-Ohio's motion to dismiss is based on a new Department of Labor ("DOL") interpretation of the "dual jobs regulation," 29 C.F.R. § 531.56(e). The interpretation is found in two guidance documents: (1) U.S. Dep't Labor, Wage & Hour Div., Op. Ltr. FLSA2018-27 (Nov. 8, 2018); and (2) Field Assistance Bulletin No. 2019-2 (Feb. 15, 2019), which explains the changes made to Field Operations Handbook § 30d00(e). I refer to these two guidance documents collectively as "New Guidance."

According to Denn-Ohio, the interpretation of the dual jobs regulation advanced in the New Guidance is controlling, and under this interpretation, Plaintiffs' claims in counts one and two must be dismissed. Before I decide whether dismissal is warranted under this new interpretation of the dual jobs regulation, I decide whether deference to the New Guidance is appropriate. To do so, I begin with a history of the dual jobs regulation and the guidance interpreting it.

1. **Relevant Interpretive History**

The dual jobs regulation was promulgated in 1967 to clarify the meaning of "tipped employee" under the FLSA. The dual jobs regulation provides:

> Dual jobs. In some situations an employee is employed in a dual job, as for example where a maintenance man in a hotel also serves as a waiter. In such a situation the employee, if he customarily and regularly receives at least $30 a month in tips for his work as a waiter, is a tipped employee only with respect to his employment as a waiter. He is employed in two occupations, and no tip credit can be taken for his hours of employment in his occupation of maintenance man. Such a situation is distinguishable from that of a waitress who spends part of her time cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses. It is likewise distinguishable from the counterman who also prepares his own short orders or who, as part of a group of countermen, takes a turn as a short order cook for the group. Such related duties in an occupation that is a tipped occupation need not by themselves be directed toward producing tips.

29 C.F.R. § 531.56(e). This regulation was not the DOL's last word on this subject. While I have previously discussed some of the prior guidance concerning the dual jobs regulation, *see Osman*, 2017 WL 2908864 at *3-4, I go into greater detail here.

In 1979, the DOL issued its first opinion letter regarding the dual jobs regulation. In this letter, the DOL addressed a restaurant which had its servers preparing vegetables for the salad bar. U.S. Dep't Labor, Wage & Hour Div., Op. Ltr. FLSA-895 (Aug. 8, 1979). The DOL concluded "since it is our opinion that salad preparation activities are essentially the activities performed by chefs, no tip credit may be taken for the time spent preparing vegetables for the salad bar." *Id.*

One year later, the DOL issued another opinion letter addressing the dual jobs regulation. U.S. Dep't Labor, Wage & Hour Div., Op. Ltr. WH-502, 1980 WL 141336 (Mar. 28, 1990). This time, faced with a situation where tipped restaurant employees "clean the salad bar, place the condiment crocks in the cooler, clean and stock the waitress station, clean and reset the tables (including filling cheese, salt and pepper shakers) and vacuum the dining room carpet, after the restaurant [was] closed," the DOL explained the employer could take the tip credit, but cautioned the result might be different if "specific employees were routinely assigned, for example, maintenance-type work such as floor vacuuming." *Id.*

The DOL issued yet another letter in 1985. U.S. Dep't Labor, Wage & Hour Div., Op. Ltr. FLSA-854, 1985 WL 1259240 (Dec. 20 1985). There, the DOL addressed a restaurant which routinely assigned one member of the waitstaff responsibility for roughly two hours of general preparatory activities that had to be completed before the restaurant opened to customers every day. The DOL first reasoned that, consistent with its 1979 letter, salad preparation resembles the activities performed by chefs, who are not tipped employees, and therefore no tip credit could be taken for time the individual spent preparing vegetables. The DOL then explained that, while there are situations where the tip credit can be taken for time spent in duties not themselves directed

8

toward producing tips, the situation described in the opinion letter did not qualify because the restaurant was assigning a single employee to perform responsibilities that extended to the entire restaurant rather than the specific area or customers that employee served. This, coupled with the fact that these non-tip producing activities were performed for a substantial portion—30% to 40%—of that opening server's workday, led the DOL to conclude that the tip credit could not be taken for time spent by the employee who was assigned opening responsibilities.

These opinion letters were eventually reflected in the DOL's Field Operations Handbook ("FOH") in 1988. While it has since been amended by the New Guidance, the previous version of the FOH read, in part:

> (2) 29 CFR 531.56(e) permits the employer to take a tip credit for time spent in duties related to the tipped occupation of an employee, even though such duties are not by themselves directed toward producing tips, provided such related duties are incidental to the regular duties of the tipped employees and are generally assigned to the tipped employee. For example, duties related to the tipped occupation may include a server who does preparatory or closing activities, rolls silverware and fills salt and pepper shakers while the restaurant is open, cleans and sets tables, makes coffee, and occasionally washes dishes or glasses.
>
> (3) However, where the facts indicate that tipped employees spend a substantial amount of time (i.e., in excess of 20 percent of the hours worked in the tipped occupation in the workweek) performing such related duties, no tip credit may be taken for the time spent in those duties. All related duties count toward the 20 percent tolerance.
>
> (4) Likewise, an employer may not take a tip credit for the time that a tipped employee spends on work that is not related to the tipped occupation. For example, maintenance work (e.g., cleaning bathrooms and washing windows) are not related to the tipped occupation of a server; such jobs are non-tipped occupations. In this case, the employee is effectively employed in dual jobs.

FOH § 30d00(f)(2016). The so-called "twenty percent rule" contained in § 30d00(f)(3) reflected the DOL's official view on this question until the New Guidance was issued. In the last ten years, the DOL has defended the twenty percent rule in amicus briefs submitted to the Eighth, Ninth, and Tenth Circuit. *See Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 877 (8th Cir. 2011); *Marsh v. J. Alexander's LLC*, 905 F.3d 610, 626 (9th Cir. 2018); *Romero v. Top-Tier Colorado LLC*, 849 F.3d 1281, 1282 (10th Cir. 2017).

9

### 2. New Guidance

Despite the longstanding adherence to this twenty percent rule, the DOL chose a different path in the New Guidance. Under this new approach, there is no limitation on the amount of related duties that a tipped employee can perform, so long as those duties are performed contemporaneously with direct customer-service duties. *See* U.S. Dep't Labor, Wage & Hour Div., Op. Ltr. FLSA2018-27 (Nov. 8, 2018). To determine which duties are related to a tipped occupation, the New Guidance directs employers to the Occupational Information Network ("O*NET"), an online database of worker attributes and job characteristics.

### 3. Auer Deference

Under *Auer v. Robbins*, courts are required to give controlling weight to an agency's interpretation of its own ambiguous regulation unless that interpretation is "plainly erroneous or inconsistent with that regulation." 519 U.S. 452, 461 (1997) (citations omitted). But in *Kisor v. Wilkie*, the Court explained that *Auer* deference is only appropriate under certain circumstances. *Kisor v. Wilkie*, 588 U.S. ---, 139 S.Ct. 2400 (2019). The Court set forth a three-step framework to determine whether *Auer* deference was appropriate in a given case.

First, the court must use all the traditional tools of interpretation to decide whether the regulation at issue is genuinely ambiguous. *Id.* at 2415. If so, the court moves to the second step, where it decides whether the agency's interpretation of the regulation is a reasonable one. *Id.* at 2415-16. Finally, because not every reasonable agency interpretation is entitled to *Auer* deference, the court must "make an independent inquiry into whether the character and context of the agency interpretation entitles it to controlling weight." *Id.* at 2416.

#### a. The Dual Jobs Regulation is Genuinely Ambiguous

"First and foremost, a court should not afford *Auer* deference unless the regulation is genuinely ambiguous." *Kisor*, 139 S.Ct. at 2415. "And before concluding that a rule is genuinely

ambiguous, a court must exhaust all the 'traditional tools' of construction." *Id.* (citing *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843, n. 9 (1984)). "To make that effort, a court must 'carefully consider[]' the text, structure, history, and purpose of a regulation, in all the ways it would if it had no agency to fall back on." *Kisor*, 139 S.Ct. at 2415 (quoting *Pauley v. BethEnergy Mines, Inc.*, 501 U.S. 680 (1991)). I do so now.

The dual jobs regulation is unambiguous in some respects. It clearly provides that an employee can have two occupations, or a "dual job," even though the employee works at only one location for one employer. It also clearly states that when a tipped employee is engaged in two occupations, one tipped and one untipped, the employer can take the tip credit only for the time the employee is engaged in the tipped occupation and not for the time the employee spends working in the occupation that does not produce tips. But the regulation is less clear about when exactly an employee is engaged in dual jobs.

As I have explained before, "[t]o properly analyze whether an employee is employed in a dual job, it is essential to know what 'related duties' are and how much time is 'part of [the] time' or 'occasionally.' The failure to define these essential terms makes the regulation ambiguous." *Osman*, 2017 WL 2908864 at *3 (citing *Fast*, 638 F.3d at 877-81). For example, the regulation does not identify what other tasks qualify as "related duties" that a restaurant server can perform while still working in only a tipped occupation.

Because I find the text of the dual jobs regulation is genuinely ambiguous, and I find nothing in the structure, history, or purpose of the regulation that resolves this ambiguity, I move to the next step in the three-part analysis established by *Kisor*.

### b. The DOL's Interpretation of the Dual Jobs Regulation is Unreasonable

At step two, I examine the agency's interpretation of the ambiguous regulation. Even if the regulation is genuinely ambiguous, the agency's reading of the regulation "must come within the

zone of ambiguity the court has identified after employing all its interpretive tools." *Kisor*, 139 S.Ct. at 2416. The Supreme Court has cautioned against assumptions that an agency's interpretation is reasonable. *Id.* ("And let there be no mistake: That is a requirement an agency can fail.").

I find the interpretation advanced in the New Guidance unreasonable because it would lead to results inconsistent with the purpose of the dual jobs regulation.

At the outset, I note the tension between the New Guidance stating "[w]e do not intend to place a limitation on the amount of duties related to a tip-producing occupation that may be performed, so long as they are performed contemporaneously with direct customer-service duties and all other requirements of the act are met," U.S. Dep't Labor, Wage & Hour Div., Op. Ltr. FLSA 2018-27 (Nov. 8, 2018) and the text of the dual jobs regulation. *See Marsh v. J Alexander's LLC*, 905 F.3d 610, 625 (9th Cir. 2018) (en banc) ("By restricting related duties with limitations such as occasionally, part of the time, and taking a turn, the dual jobs regulation necessarily distinguishes between single-job employees who only occasionally compete related tasks, and dual-job employees who regularly do.") (internal quotation marks omitted); *see also Fast*, 638 F.3d at 879 (explaining the dual jobs regulation "clearly places a temporal limit on the amount of related duties an employee can perform and still be considered to be engaged in the tip-producing occupation.").

Even if this tension alone did not render the New Guidance's interpretation unreasonable, the New Guidance's reliance on O*NET occupational definitions would. The dual jobs regulation was intended to prevent employees from evading the requirements of the FLSA by having tipped employees perform non-tipped work that would otherwise be performed by higher-paid, non-tipped employees. This purpose is undermined by relying on O*NET, which, at least in part, relies on data obtained by asking employees which tasks their employers are requiring them to perform. *See* https://www.onetcenter.org/dataCollection.html (last visited December 10, 2019). If employers assign tipped employees duties traditionally performed by non-tipped employees, the O*NET

12

definitions will reflect this and the protections established by the dual jobs regulation will erode. An interpretation of the dual jobs regulation that would allow employers to re-write the regulation without going through the normal rule-making process cannot be a reasonable one.

### c. Alternative Grounds for Denying *Auer* Deference

Although I have decided *Auer* deference is inappropriate, I continue with the analysis to emphasize an alternative holding on this issue. Even if this was a reasonable interpretation, it would not be entitled to *Auer* deference given the "character and context of" the New Guidance. *See Kisor*, 139 S.Ct. at 2416. This is because the DOL's reading does not reflect its "fair and considered judgment" of the question. *See Kisor*, 139 S.Ct. at 2417-18 (quoting *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 155 (2012)).

First, the New Guidance represents a stark change from the approach the DOL adhered to for decades before its issuance. *See Kisor*, 139 S.Ct. at 2418 (explaining that *Auer* deference is rarely given to agency constructions that conflict with previous ones.). While it is true that the DOL once strayed from this approach in a 2009 opinion letter, that letter was issued by an outgoing administration and withdrawn immediately when the new administration took office months later. The fact that the 2018 letter "reproduces below the verbatim text" of that 2009 letter further counsels against deferring to it here. I find it implausible that the DOL gave its "fair and considered judgment" to a question only to conclude that it had actually arrived at exactly the right answer nine years prior.

The timing of the New Guidance casts further doubt on its interpretive integrity. The November 8 opinion letter came mere months after the Restaurant Law Center and the Texas Restaurant Association filed suit against the DOL, challenging its authority to implement and enforce the dual jobs regulation. *See Restaurant Law Center v. Dept. of Labor*, Case No. 1:18-cv-00567, 2018 WL 3374109 (W.D. Texas, July 6, 2018). That case was jointly dismissed on November 30,

13

2018. All of this makes the decision to reissue the 2009 opinion letter resemble a "convenient litigating position" that is not entitled to *Auer* deference. *See Kisor*, 139 S.Ct. at 2417.

Denn-Ohio argues that the DOL change is not an unexplained shift because the DOL's rationale, as laid out in the November 8 opinion letter itself, was to resolve the ambiguity surrounding the interpretation. (Doc. No. 14 at 6). But even if this was the true rationale for this shift in their interpretive approach, that would not justify deferring to the interpretation set out in the New Guidance. Clarity and consistency may be laudable goals, but the pursuit of those ends does not give the DOL free reign to reimagine the meaning of a regulation it wrote into law decades ago. If the DOL believes the dual jobs regulation does not appropriately carry out the FLSA because it has been applied inconsistently by courts, it remains free to implement a new regulation through the appropriate procedures, but it may not circumvent those procedures by distorting the meaning of an existing regulation.

**4. Skidmore Deference**

*Skidmore* deference is deference "proportional to the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade." *Christopher*, 567 U.S. at 159 (quoting *United States v. Mead Corp.*, 533 U.S. 218, 228 (2001) (citation and internal quotation marks omitted)). For reasons similar to those discussed in the *Auer* deference portion of this opinion, I also decline to grant the New Guidance *Skidmore* deference.

I note again how the New Guidance flies in the face of decades of DOL interpretations and applications of the dual jobs regulation that used an entirely different analytical framework. While that past practice is not binding, it is relevant because it shows the New Guidance's lack of consistency with earlier pronouncements.

As for the thoroughness evident in its consideration and the validity of its reasoning, the New Guidance does not provide any reasoning for reissuing the 2009 opinion letter other than that the DOL wants to provide clarification to resolve issues of inconsistent application. As I explained above, resolving ambiguity may be a noble goal, but the DOL does not provide any reasons for resolving it with this interpretation, rather than, for example, its previous bright-line rule regarding related duties.

I join many of my trial court colleagues who have also found the New Guidance lacks the power to persuade. *See Flores v. HMS Host. Corp.*, No. 8:18-cv-03312, 2019 WL 5454647 (D. Md. Oct. 23, 2019) (collecting cases).

**5. Independent Interpretation**

Because I decline to defer to the New Guidance, the question remains what substantive standards will apply to each of the Plaintiffs' claims. Here, I identify each standard and evaluate Denn-Ohio's motion to dismiss accordingly.

**a. Count One – Required Labor Unrelated to Tipped Occupation**

For count one, the issue is whether the non-tipped duties Plaintiffs allege they performed qualify as duties unrelated to their tipped occupation. Although I do not defer to the New Guidance's framework for determining whether duties are related or unrelated to a tipped occupation, I note that even the New Guidance prohibited employers from taking the tip credit for time spent performing unrelated tasks. Therefore, one aspect of the standard here is straightforward: for their claim to survive Plaintiffs must allege they performed untipped labor unrelated to their tipped occupation.

Whether tasks are related or unrelated is less straightforward. As I discussed earlier, the dual jobs regulation itself is ambiguous in this regard. Because of this, I conclude whether something is related or unrelated to a tipped occupation is a question of fact.

Thus, to survive the motion to dismiss, Plaintiffs must show a reasonable factfinder could conclude Plaintiffs have performed untipped labor unrelated to their tipped occupation. The following are among the non-tipped duties unrelated to their tipped occupation that Plaintiffs allege they were regularly and frequently required to perform:

> working the grill line and performing the primary job duties of cook; performing the primary job duties of a host or hostess; taking out trash; scrubbing walls; sweeping and mopping floors; cleaning booths; operating the dishtank and performing the primary job duties of a dishwasher; breaking down and cleaning the server line; ensuring the general cleanliness for the front of the house; detail cleaning throughout the restaurant; stocking stations throughout the restaurant; stocking ice; preparing delivery orders Uber Eats, Grub Hub and Door Dash; preparing takeout orders and online orders from Denny's.com; answering the phone; working the cash register; greeting and seating customers; preparing salads; preparing deserts, ice creams and milkshakes; cutting lemons, limes, melons and strawberries; washing and stocking unsliced fruits; baking biscuits; preparing specialty drinks such as lemonades, limeades and teas; and rolling bins full of silverware.

(Doc. No. 21-1 at 15). A reasonable factfinder could conclude that at least some of these tasks are unrelated to the tipped occupation of server. Therefore, count one of Plaintiffs' complaint survives.

### b. Count Two –Required Excessive Amounts of Related Labor

For count two, the issue is whether the Plaintiffs performed non-tipped labor related to their tipped occupation more than "part of the time," or "occasionally." *See* 29 C.F.R. § 531.56(e). The question becomes where to draw that line. The Sixth Circuit has not addressed this question directly. But, as discussed above, the majority of courts that have confronted this question have adhered to the twenty-percent rule previously advanced by the DOL. I join these courts and evaluate Plaintiffs' claims against that standard.

Here, Plaintiffs allege they were required to perform non-tipped labor related to their tipped occupation in excess of twenty percent of their regular workweek. (Doc. No. 21-1 at 22-23). Plaintiffs also allege they were required to spend an unreasonable amount of time performing non-tipped work even though that non-tipped work was related to their tipped work, including "cleaning

16

and setting tables, toasting bread, making coffee and washing dishes or glasses." (Doc. No. 21-1 at 23).[4] Based on this, I find Plaintiffs have sufficiently stated a plausible claim for relief in count two.

### C. Denn-Ohio's Challenge to Personal Jurisdiction

Denn-Ohio challenges this Court's personal jurisdiction over individuals who both: live outside of Ohio and work at Denn-Ohio's stores outside of Ohio. (Doc. Nos. 29 & 31). This challenge is based largely on my colleague's decision in *Rafferty v. Denny's Inc.*, No. 5:18-cv-2409, 2019 WL 2924998 (N.D. Ohio July 8, 2019).

In *Rafferty*, which dealt with a FLSA collective action brought against a different group of Denny's restaurants, the court held it lacked personal jurisdiction over the claims of putative collective members who did not reside in or work at restaurants located in Ohio. But *Rafferty* is distinguishable from the present situation in the following ways.

With regard to specific jurisdiction, the record in *Rafferty* did not contain anything linking the claims by employees living and working outside of Ohio to the Denny's restaurants located within the state. But in the present litigation, which currently has a much less developed record, and which involves allegations that Defendants operated all of the Denny's restaurants they own as a single enterprise, it is too soon to say that claims by out-of-state Plaintiffs did not arise out of Defendants contacts with the state of Ohio.

There are also open questions concerning general jurisdiction over these defendants as well. While Denn-Ohio has submitted evidence that its place of incorporation is Michigan, (Doc. No. 31-1), the place of incorporation is only one of the two " 'paradigm' forums in which a corporate defendant is 'at home.'" *BNSF Ry. Co. v. Tyrrell*, — U.S. —,137 S.Ct. 1549, 1558 (2017) (quoting

---

[4] Should the ultimate factfinder conclude that some of the duties identify in count one are in fact related to Plaintiffs' tipped occupation, the time spent performing those duties would still be relevant to Plaintiffs' claims in count two.

*Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)).

Further, Plaintiffs argue that Denn-Ohio has waived any argument it might raise to personal jurisdiction. I find it best to hold off ruling on the jurisdictional issues until after the parties—including the defendants added by virtue of this order—have the opportunity to present evidence and arguments.

### D. Plaintiffs Motion for Conditional Certification and Equitable Tolling

Plaintiffs seek to conditionally certify a collective action of: "All individuals who worked at any time during the past three years at any restaurant owned or operated by Defendants in the job position of server and who were paid for their work on an hourly basis according to the tip credit provisions of the FLSA, (i.e. an hourly rate less than the applicable minimum wage, excluding tips)." (Doc. No. 11 at 3; Doc. No. 21-1 at 17). Because this would include individuals over whom this Court may lack jurisdiction, I will rule on the motion for conditional certification and the motion for equitable tolling at a later date.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for leave to amend the complaint, (Doc. No. 21), is granted. Denn-Ohio's motion to dismiss counts one and two of Plaintiffs' complaint, (Doc. No. 7), is denied. In light of the Court's order, the January 16, 2020, telephone status conference is rescheduled to 3:00 PM on January 30, 2020. Counsel to call into the bridge line at (877) 411-9748; access code: 1231873.

So Ordered.

                                                s/ Jeffrey J. Helmick
                                                United States District Judge